## John Endsley
### v.
## Joshua Johns.

1. Misrepresentations as to solvency—Instruction.—In an action for a misrepresentation as to the financial ability of a person, an instruction that the law is that if a person makes an untrue statement to another, knowing it to be untrue, and the person to whom it is made has no knowledge of its untruth, but relied on such statement as true, and acted upon the same and was injured thereby, then the person so making such statement is liable for the damages accruing to the party thus acting. *Held*, that as the only fact about which there was misrepresentation, if there was any, was a material one, such instruction is not fatally defective, because it omits that the actionable misrepresentation must be as to a material fact.

2. Same—Use of ordinary care.—The above instruction is not erroneous in that it omitted the qualification that the plaintiff must use ordinary care. This being a case for deceit in recommendation as to credit, and under the circumstances of the case, as stated in the declaration, it not being necessary to insert the qualification as to ordinary care, it was not necessary to insert it in the instruction.

Appeal from the Circuit Court of Coles county; the Hon. C. B. Smith, Judge, presiding. Opinion filed December 4, 1885.

Messrs. Robinson, Golden & Fryer, for appellant; as to instructions, cited Am. Cent. Ins. Co. v. Rothchild, 82 Ill. 166; O. & M. Ry. Co. v. Porter, 92 Ill. 437; Schwabacker v. Riddle, 99 Ill. 343; Williams v. McClure, 50 Ill. 390.

Messrs. Wiley & Neal, and Mr. Horace S. Clark, for appellee; as to what is necessary to prove to recover in an action of deceit, cited Dwight v. Chase, 3 Bradwell, 67; McBean v. Fox et al., 1 Bradwell, 177; Merwin v. Arbuckle, 81 Ill. 501; Wheeler v. Randall, 48 Ill. 182; Hiner v. Richter, 51 Ill. 299; Benton v. Pratt, 2 Wend. 386; Patton v. Gumly, 17 Mass. 182; Nolte v. Reichelm, 96 Ill. 425; Gallagher v. Brunel, 6 Cow. 347; Kerr on Fraud and Mistake, page 53; Brandt on Suretyship and Guaranty, Sec. 59; Addison on Torts, Sec. 38.

Endsley v. Johns.

WALL, P. J. This was an action on the case by the appellee against the appellant. The declaration contains two counts. In the first it is alleged that defendant, who was known to plaintiff to be a person of means and responsibility, falsely and fraudulently represented to plaintiff that the check of one John Kimlin for $1,041.74 was good and would be honored by the bank, etc.; that said Kimlin was good; that his check was good and that he would pay the plaintiff for any cattle he might purchase of him; that these representations were made with intent to injure and deceive; the plaintiff, relying upon their truth, sold his cattle to said Kimlin and received his check therefor, which was never paid, and that plaintiff has thereby wholly lost said amount.

The second count is upon the same cause of action and is in substance like the first.

There was a trial by jury upon a plea of not guilty and the issue was found for plaintiff.

Judgment followed and the record is brought here by defendant. We will consider the errors assigned in the order as they appear in the brief.

It is first urged that the second instruction for plaintiff is erroneous, because it advised the jury that if defendant made the representations alleged in the declaration, or the material part of them, and that such representations, or the material part of them, were false, etc., etc., then the verdict should be for plaintiff. The objection is that the jury were thus authorized to determine what part of the alleged representations were material; that this is a question of law for the court and not for the jury. The proposition is correct that the court must determine what allegations in a pleading are material and necessary to be proved, and that it is improper to submit such a question to the jury; and if any substantial injury is occasioned by such a course it would be a just ground of complaint.

In such a case as this it is not necessary for the plaintiff to prove all the misrepresentations set out in the declaration. Such allegations are divisible and he may succeed if he can prove any one of them which of itself makes a cause of action.

Looking at the allegations here it will be seen that they are all very much the same in effect, and that each so called misrepresentation, when coupled with the general averments of the court, would constitute a cause of action. It is difficult therefore to see how the jury could have been misled, or the rights of defendant substantially affected by the inaccuracy of this instruction. There was conflict in the testimony, and the jury may have reached an unjust conclusion; but considering the evidence in connection with the declaration, we can not suppose the verdict is due to a misapprehension of what allegations the plaintiff was required to prove, and while the instruction is subject to criticism in the respect indicated, we are not inclined to reverse the case for that reason.

The next objection is to the 6th instruction for plaintiff, which is as follows:

The law is that if a person makes an untrue statement to another, knowing it to be untrue, and the person to whom it is made has no knowledge of its untruth, but relied on such statement as true, and acted upon the same, and was injured thereby, then the person so making such statement is liable for the damages accruing to the party thus acting.

It is urged this is an incorrect statement of the rule of law applicable in such a case as the one at bar. The first instance in which it was adjudged that an action of tort was maintainable for a misrepresentation respecting the financial ability of a third person is the case of Pasley v. Freeman, 3 T. R. 51. This celebrated case was decided in 1789, and is an acknowledged precedent.

It has been said that one of the consequences of this decision was to considerably qualify that enactment of the Statute of Frauds and Perjuries which requires guarantees to be in writing, and in England the statute has been amended in this respect by what is commonly known as Lord Tenterden's Act, 9 G. 4, C. 14. 1 Smith's Lead. Cases, 79. In this country the decision has been generally approved and may be regarded as well settled law.

As was said by Chief Justice Marshall, in Russell v. Clark,

4 Cranch, 69 :  " That a fraudulent recommendation (and a recommendation known at the time to be untrue would be deemed fraudulent ) would subject the person giving it to damages sustained by the person trusting it—seems now to be generally admitted.

" The case of Pasley v. Freeman recognizes and establishes this principle.   Indeed if an act in itself immoral, in its consequences injurious to another, performed for the purpose of effecting that injury, be not cognizable by our laws, and punishable, our system of jurisprudence is more defective than has hitherto been supposed." The ground of action is fraud and damage.  There must be the  scienter,  a misrepresentation, and a consequent loss.

Fraud includes an intention to deceive.   If there is no such intention, the party giving honestly his own opinion, believing he was stating the truth, he is not liable though the statement was wholly untrue.   Where, however, he knowingly states what is untrue, a fraudulent purpose must be inferred, and when the statement relates to the matter inquired of, and being relied on necessarily brings damage to the person so misled, he having no knowledge of its untruth, the action will lie.

For an extended discussion of the subject see 2 Smith's Leading Cases, *55 ; also 2 Kent. Com. 9; Ed. 661.  Counsel for appellant argues, however, that on the authority of Schwabacker v. Riddle, 99 Ill. 343, this instruction must be held fatally defective.   In that case the action was based upon a false declaration as to the amount of goods belonging to a certain firm, an interest in which the plaintiff was proposing to purchase.   The Supreme Court there held that an instruction which merely announced that if a party misrepresent a fact within his own knowledge to the injury of another, an action will lie for damages, was faulty.

The court said the misrepresentation must be material and the plaintiff must exercise ordinary prudence to protect himself against the fraud, unless he has been thrown off his guard by the other party, and the instruction was held bad because it ignored these principles.   These principles were no doubt applicable in that case, which was wholly unlike the present

case. There the representation was not concerning the credit or solvency of a third person, but as to the amount and value of the property under negotiation; and it was quite reasonable the plaintiff should be held to the use of the means at his command to guard against deception; and in view of the representations involved, it was equally proper the jury should understand that for the misrepresentation of an immaterial matter there was no liability. Here the instruction must be taken to refer to the misrepresentations averred in the declaration, each and all of which were material, as already stated, and when coupled with other allegations made a good cause of action. The question of fact was whether defendant represented the check to be good.

The only fact about which there was misrepresentation, if there was any, was a material one, and it is not apparent why an instruction referring to this controversy should necessarily say that an actionable misrepresentation must be as to material fact.

· We think the instruction not defective because it omits this qualification. Then, is it defective because it omits the qualification that the plaintiff must use ordinary care?

In actions on the case for negligence such an allegation is necessary in the declaration, but not in actions for deceit in recommendations for credit. In the opinion of Lord Kenyon, in Pasley v. Freeman, a distinction is taken in this respect between representations as to ordinary facts, the proof of which is equally within the reach of both parties, as, for instance, the weight of goods delivered to a carrier, and representations as to credit and solvency. He said, "There are many situations in life, and particularly in the commercial world, where a man can not by any diligence inform himself of the degree of credit which ought to be given to the persons with whom he deals, in which cases he must apply to those whose sources of intelligence enable them to give that information. The law of prudence leads him to apply to them, and the law of morality ought to induce them to give the information required.

"In the case of Bulstrode the carrier might have weighed

the goods himself, but in this case the plaintiff had no means of knowing the state of Falch's credit but by an application to his neighbors." These observations are apt and pertinent upon the facts as alleged by the plaintiff in the present case. He states that he had bargained the cattle to Kimlin at a certain price, and was to deliver them at the railroad station the next day. Arriving there he found defendant, who was the owner of the scales, ready to weigh the cattle. Kimlin not having come, that defendant did weigh the cattle, calculated the amount due at the agreed price per pound, and was proceeding to fill up the check which Kimlin had previously signed and given defendant for that purpose, when plaintiff asked whether the check was good; to which defendant replied that it was.

It is no doubt true plaintiff might have suspended proceedings until he could inquire of the bank by telegraph or by some other means whether the check would be honored, but in view of the fact that such delay would have prevented the shipment of the cattle by the train on which they were then being placed, and in view of the apparent familiarity of defendant with the affairs of Kimlin, this would seem to be a case where, in the language of Lord Kenyon, the law of prudence led plaintiff to apply to defendant for the information, and the law of morality required the latter to give it truthfully or not at all. In such a case as here made, it is not necessary to aver and prove care and diligence on the part of plaintiff. Where in the course of trade or business one may thus inquire concerning the credit of another, the person answering must commit no deception. Why inquire at all, if before he can rely upon what he learns he must verify it by all the means which might be resorted to? The object of the inquiry is to obtain information for immediate use, and it does not come with good grace from the party who willfully misrepresented the facts, to say that the plaintiff should not have been so credulous, since by applying to another more reliable source he could have got the truth. Therefore, as it was not necessary to aver and prove due care on the part of plaintiff, in a case such as stated in the declaration, we are clear it was not necessary to insert

such a qualification in an instruction which could be understood as applicable only to such a case as plaintiff had alleged, and as he had proved by his testimony. The issue of fact was whether the alleged representation was made, the defendant knowing it to be untrue, and plaintiff relying upon it to his damage. It could not be well denied that plaintiff might rely upon such a representation, under the undisputed circumstances of the transaction, and we are of opinion there was no error in the giving of this instruction. The defendant asked the court to give instruction No. 4, as follows:

The court further instructs the jury that it was the duty of the plaintiff, before acting upon any representations made to him concerning Kimlin, if any such representations have been proven, to have exercised ordinary care and caution to guard against deception and fraud, and if he co uld by the exercise of ordinary care and caution have ascertained the falsity of any statements or representations made to him, and he failed to do so, then he is not entitled to recover in this action, and the jury should find for the defendant. The court modified it by adding:

Unless you believe from the evidence that the alleged state-ments of defendant were of such character as to induce plaintiff to 1e'y entirely on their truth, and to induce plaintiff not to make such investigation as a reasonably prudent man would make under different circumstances.

It is urged that in this the court erred, because it was not a question whether the alleged statements were of such a character as to throw plaintiff off his guard, but as a matter of fact did they so operate upon him. We do not appreciate the force of this objection, and think it would be hypercritical to condemn the instruction on the ground stated.

We are asked to reverse the case on the evidence, and we have given this point a very careful examination. We find there is palpable and irreconcilable conflict in the evidence, the plaintiff and defendant disagreeing radically as to whether the alleged representation was made, and each party is corroborated by their witnesses.

The jury probably found they could not harmonize this

testimony, and were compelled to believe one side and disbelieve the other upon this point. On other points—the insolvency of Kimlin, the knowledge of defendant as to this, the loss of plaintiff—there was no great difficulty.

Considering the superior opportunity of the trial judge and the jury, who saw all the witnesses, to determine between these conflicting statements, it must be apparent that we can not undertake to say the conclusion reached was not justified.

It is urged also that the court erred in permitting Kimlin to testify that he made an arrangement with defendant the day before the transaction to "make the check good" with plaintiff. This would be competent as tending to prove the defendant's knowledge of the truth of the alleged representation. It is also objected that there was error in allowing the introduction of certain shipping bills in which Kimlin and defendant were jointly interested. We can not consider this because it does not appear that these matters of evidence were objected to when they were offered. The judgment is affirmed.

Affirmed.